FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS CIVIL DIVISION

2018 JUL 26  PM 12: 07

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

CIVIL ACTION NO.:

EDDIE I. SIERRA,

    Plaintiff,

vs.

2:18-cv-519-FtM-99CM

CHARLOTTE COUNTY, FLORIDA

    Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The Plaintiff, EDDIE I. SIERRA, by and through his undersigned counsel, hereby files his Complaint against CHARLOTTE COUNTY, Florida, for declaratory and injunctive relief, and in support states as follows.

### INTRODUCTION

1.    Mahatma Gandhi said, "The true measure of any society can be found in how it treats its most vulnerable members." Plaintiff Eddie Sierra is deaf. Plaintiff advocates for our society's most vulnerable, the elderly and persons with disabilities and brings this action to force CHARLOTTE COUNTY, Florida to end its discriminatory policies and practices; to provide him with equal access to its services, programs, and activities; and to cease its violation of his fundamental rights under the United States Constitution. This action is brought under Title II of the Americans with Disabilities Act of 1990; Section 505 of the Rehabilitation Act of 1973 through which Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") is enforced, to redress unlawful disability-based practices; and 42 U.S.C. § 1983 for violations of Plaintiff's

rights under the United States Constitution. Plaintiff seeks damages and injunctive relief to make him whole. Defendant CHARLOTTE COUNTY, Florida, ("CHARLOTTE COUNTY") is a public entity which denied Eddie I. Sierra both access to Defendant's archived video for streaming on demand and access to live streaming[1] of Defendant's County Commission meetings, on the basis of his disability, being hard of hearing and deaf. In so doing, CHARLOTTE COUNTY, Florida denied Eddie I. Sierra a fundamental right to observe and participate in the democratic process of self-government under the United States Constitution. Federal judges in the Tenth and Eleventh Circuit Courts of Appeal have both held that Constitutional rights are implicated when deaf plaintiffs are seeking access to legislative video on public entity websites: "The right to meaningful participation in the political process and right of access to publicly available information needed to participate in the process is a fundamental right, and an infringement of the right should receive heightened scrutiny." *See Johnny Reininger, Jr. v. State of Oklahoma,* Case No. 5:16-cv-01241-D (W.D. Okla. November 9, 2017) (DE 40). In the Southern District of Florida, Judge Ursula Ungaro held: "Plaintiffs are not seeking just any public information, but rather information that goes to the very heart of the democratic process: the text of legislative proceedings. Accordingly, their fundamental right to participate in the democratic process is implicated." *National Association of the Deaf et al v. State of Florida et al.,* Case No.: 18-cv-21232-UU (S.D. Fla. June 18, 2018).

2.    CHARLOTTE COUNTY, Florida's video and live streaming of online content constitutes "programs, services and activities" that are available to anyone who accesses its website. However, this content is not available for persons who are deaf or hard of hearing due to access barriers, including failure to provide closed captioning. 28 CFR §35.130.

---

[1] As used herein live streaming means the streaming of a live event, over the internet, as it occurs.

3.      Qualified or otherwise qualified individuals who are deaf, require auxiliary aids or services, such as closed captioning services, to meaningfully access the online audiovisual content and audio content. CHARLOTTE COUNTY, Florida's audiovisual content is not closed captioned.

4.      Plaintiff brings this action against CHARLOTTE COUNTY, Florida to enforce Section 504 of the Rehabilitation Act which requires that a public entity receiving federal financial assistance, not deny persons with disabilities the benefits of its programs, services and activities. [2] CHARLOTTE COUNTY, Florida's adopted 2017-2018 budget includes federal financial assistance as a revenue source.

5.      By failing to provide auxiliary aids or services, CHARLOTTE COUNTY, Florida deprives deaf and hard of hearing individuals the benefits of its online content, a benefit afforded to non-disabled individuals, thereby increasing the sense of isolation and stigma that the ADA and Section 504 were meant to redress for individuals with disabilities.

6.      On June 5, 2018 Plaintiff requested that the CHARLOTTE COUNTY, Florida provide auxiliary aids and services—closed captions—for its online content in a timely and accurate fashion. The CHARLOTTE COUNTY, Florida has not provided closed captions or any other auxiliary aids or services for its online audiovisual content. In one month since Plaintiff made the request, The CHARLOTTE COUNTY, Florida has not answered Plaintiff's request nor closed captioned any of its video content.

7.      CHARLOTTE COUNTY, Florida's denial of its publicly available online content to deaf and hard of hearing persons violates Section 504 of the Rehabilitation Act, Title II of the ADA and 42 U.S.C. § 1983.

---

[2] See 29 USC §794(a)

8.     Accordingly, Plaintiff seeks injunctive and declaratory relief to ensure that deaf and hard of hearing individuals have equal, effective and timely access to CHARLOTTE COUNTY, Florida's publicly available online content, and other damages as pled *infra*.

## JURISDICTION AND VENUE

9.     Plaintiff brings this action under sections 12132 and 12133 of the ADA, 42 U.S.C. §§12132 and 12133 incorporating by reference the remedies, procedures and rights under the Rehabilitation Act, 29 U.S.C. §§794 and 794a(a)(2) and (1)(a), and under section 505 of the Rehabilitation Act, which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a(a)(2) incorporating the remedies, rights and procedures set forth in section Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d et. seq., and under 42 U.S.C. §§ 1983 and 1988.

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, as the claims presented arise under the Constitution and laws of the United States and 42 U.S.C. §12188. This Court's jurisdiction is proper under 28 U.S.C. §§ 451, 1331, and 1343.

11.     CHARLOTTE COUNTY, Florida's unlawful practices have been occurring since 2005 and continue to occur in the Middle District of Florida.

12.     Plaintiff is interested in the workings of local and state government. In that regard, he would like to observe how CHARLOTTE COUNTY, Florida government conducts its business; learn about its legislative history; participate in elder and disability rights advocacy; discover information about the; explore activities and visitor information for the elderly and disabled; and learn about its disability rights policies as Plaintiff believes that the public-sector disability rights policies inform the basis of other policies. Plaintiff has visited Defendant's website in the past including July 9,10 and 15, 2018.  He intends to continue to visit Defendant's

4

website in the immediate future. Defendant's website constitutes a "Program and Activity" under the Rehabilitation Act 29 U.S.C. §794(b)(1)(A). However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's website, Plaintiff will continue to be denied full and equal access to the video content on Defendant's website, and its live streaming.

13.    Plaintiff is expressly authorized to bring this action under the Americans with Disabilities Act (ADA) 42 U.S.C. Sections 12132 and 12133, incorporating by reference the remedies and procedures and rights under the Rehabilitation Act, 29 U.S.C. Section 794 and 794a(a)(2) and under Section 505 of the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a(a)(2) incorporating the remedies, rights and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d *et. seq*. and under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of the rights and privileges secured by the United States Constitution under color of state law, custom and practice.  Plaintiff has complied with all prerequisites to bring this complaint for violation of the ADA, the Rehabilitation Act and 42 U.S.C. § 1983.

14.    The Twenty-First Century Communications and Video Accessibility Act (CVAA) is not applicable to this action because Defendant is exempt from the closed captioning requirements under the CVAA.  The Federal Communications Commission regulations grant self-implementing exemptions (Defendant is not required to apply for the exemption) from the CVAA closed captioning requirements if a video programming provider has not made more than Three Million Dollars ($3,000,000) from a channel of programming in the previous year. Because Defendant has not received revenue in excess of $3,000,000 from the operation of its government access channel, it is automatically exempt from the CVAA closed captioning

requirements. Since Defendant is exempt from the CVAA, it cannot violate the CVAA. As a result, Plaintiff does not have CVAA administrative remedies available at the Federal Communications Commission (FCC) which accepts complaints that allege a violation of the CVAA regulations. *See*, 47 C.F.R. 79.1(g)(1). However, "[W]hen it [FCC] adopted closed captioning mandates for television, the Commission made clear that entities that qualify for an exemption from the FCC's closed captioning requirements may be obligated under other federal statutes, such as the Americans with Disabilities Act (ADA), to make their services and programs, including video programming services accessible to individuals with disabilities. *Closed Captioning and Video Description of Video Programming, Implementation of Section 305 of the Telecommunications Act of 1996, Video Programming Accessibility,* Report and Order 13 FCC Rcd 3272, 3342, n.534 (1997) (1997 Closed Captioning Order). "[T]he Commission's rules and are not intended to 'preclude or supersede the operation of federal laws that may require an entity exempt from the [the FCC's closed captioning requirements] to make its video programming services accessible to people with disabilities." *1997 Closed Captioning Order*, 13 FCC Rcd 3272, 3342, n.534. *See also* 28 CFR Appendix B to part 35, Guidelines of ADA Regulation and Nondiscrimination on the Basis of Disability in State and Local Government Services, 56 FR 35696, 35712 (July 26, 1991) (noting that television and videotape programming produced by public entities is covered under 28 CFR §35.160, and further noting that "[a]ccess to audio portions of such programming may be provided by closed captioning").

## PARTIES

15.    Plaintiff is deaf and is substantially limited in the major life activity of hearing. Plaintiff does not understand or use sign language. He has been deaf since he was five years of

age.  Plaintiff acts as an advocate for persons with disabilities and the elderly and operates a non-profit organization that addresses the needs of seniors.

16.     Plaintiff is an otherwise qualified or qualified individual with a disability in that Plaintiff is qualified to access CHARLOTTE COUNTY, Florida's video streaming program or service.

17.     Due to his disability, the Plaintiff requires auxiliary aids and services, such as closed captioning services, to be able to participate in and receive the benefit of the CHARLOTTE COUNTY, Florida's online videos and content.

18.     CHARLOTTE COUNTY, Florida is a public entity within the meaning of Title II of the Americans with Disabilities Act and at all times relevant has been a recipient of federal funds under the Rehabilitation Act of 1973. CHARLOTTE COUNTY, Florida is a "person" under 42 U.S.C. § 1983. CHARLOTTE COUNTY, Florida is a body corporate and political subdivision of the State of Florida.

## GENERAL ALLEGATIONS

19. CHARLOTTE COUNTY, Florida provides a live streaming service through its online portal where any interested persons can stream the live meetings of the CHARLOTTE COUNTY, Florida County Commission.  In these simulcast meetings, the CHARLOTTE COUNTY, Florida County Commission is receiving information and statements from the public, negotiating and voting on issues concerning procurement, culture, elections, transportation, zoning, taxes, spending, parks the elderly and disabled. However, CHARLOTTE COUNTY, Florida's live streaming is done in a discriminatory manner because it is not closed captioned.

20. CHARLOTTE COUNTY, Florida also has archived videos on its website ranging from 2005 to present which are linked to this complaint.  These videos show the County

7

Commission discussing and voting on transportation concerns, procurement contracts, tax rates, cultural activities issues impacting the elderly and people with disabilities. http://charlotte.granicus.com/ViewPublisher.php?view_id=15. However, none of this programming is available to persons with hearing disabilities. CHARLOTTE COUNTY, FLORIDA also has videos on its Facebook page from March 2016 to July 2018. https://www.facebook.com/pg/CharlotteCountyFlorida/videos/?ref=page_internal. None of these videos are captioned, despite the fact that Facebook has provided tools within the platform to do so.

21.     Persons who are not limited in the major life activity of hearing are able to use CHARLOTTE COUNTY, Florida's live streaming and on demand video service to watch and listen to CHARLOTTE COUNTY, Florida's legislative decision-making activities via the live streaming service. They are also able to meaningfully use and benefit from other archived videos from CHARLOTTE COUNTY, Florida.

22.     Plaintiff Sierra is prevented from observing and participating in CHARLOTTE COUNTY, Florida's live streamed meetings or viewing its archived content identified in ¶20 because of his hearing disability.

23.     To aid in his advocacy, Plaintiff will return to the CHARLOTTE COUNTY, Florida website on a monthly basis to use its video archives and live-streaming services of future County Commission and other meetings and activities, but for the unlawful barrier created by CHARLOTTE COUNTY, Florida's refusal to provide closed captioning services for its archived videos and live streaming of its County Commission meetings. Thus, Plaintiff has been effectively barred from access to the CHARLOTTE COUNTY, Florida's online video and live

8

streaming content.

24.    On or about June 5, 2018 Plaintiff, in his own right and as an advocate for disabled persons, requested the CHARLOTTE COUNTY Administrator, to provide auxiliary aids and services including but not limited to closed captioning of videos on its website and closed captioning for its live County Commission meetings. Plaintiff requested closed captioning because he does not use or understand sign language.

25. CHARLOTTE COUNTY, Florida has failed to provide Plaintiff with any of the requested auxiliary aids and services for its live streamed and archived content.

26.    Plaintiff has been denied access to Defendant's online videos on numerous occasions as stated in ¶12.  Plaintiff was denied access to CHARLOTTE COUNTY, Florida's archived videos identified in ¶20.  The archived videos remain inaccessible because they are not closed-captioned.

27. CHARLOTTE COUNTY, Florida is a public entity as defined in 42 U.S.C. Section 12131(1) of the ADA, in that it is a local government entity, a body corporate and political subdivision of the State of Florida.

28.    As a public entity, Defendant must:

a)    Provide full and equal enjoyment of its services, programs, and activities in the *most integrated setting* appropriate to people with disabilities. 42 U.S.C. §12131, *et. seq.*; 28 C.F.R. §35.130(a).

b)    Ensure that no individual with a disability is excluded, denied services, *segregated, or otherwise treated differently* than other individuals unless the public entity can demonstrate that taking those steps to modify policies, practices, or procedures would fundamentally alter the nature of the service, program, or activity; 28 C.F.R.

9

§35.130(b)(7).

       c)     Ensure that no individual with a disability is excluded, denied services, *segregated or otherwise treated differently* than other individuals unless the public entity can demonstrate that legitimate safety requirements are necessary for safe operation. Any safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities; 28 C.F.R. §35.130(h). (emphasis added).

29.     At all times relevant, CHARLOTTE COUNTY, Florida has been a recipient of federal financial assistance.

30.     Since at least 2005, CHARLOTTE COUNTY, Florida has engaged in unlawful practices in violation of the ADA Section 12132; 28 C.F.R. 35.130(a)-(b)(1), 28 C.F.R. 35.160(a) and (b)(2) and in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794. These practices include but are not limited to denying Eddie I. Sierra, an individual with a disability who, with or without reasonable modifications to the rules, policies or practices; the removal of communication barriers; or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by CHARLOTTE COUNTY, Florida including access to the on demand and live streaming video services of the CHARLOTTE COUNTY, Florida.

31.     For its archived video content, identified above in ¶20, CHARLOTTE COUNTY, Florida has acted with deliberate indifference to the provisions of the Rehabilitation Act and Title II of the ADA regarding the unlawful practices described herein because CHARLOTTE COUNTY, Florida received Sierra's request for auxiliary aids, is aware of the availability of

auxiliary aids and services and does not provide closed captioning, for its content identified in ¶¶19 and 20, and has failed to provide such auxiliary aids and services upon notice of Plaintiff's request for the same.

32. The international website standards organization, W3C, has published widely-accepted guidelines ("WCAG 2.0 AA") for making video content accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice, the Federal Courts and adopted by the United States Access Board, an independent federal agency that promotes equality for people with disabilities, as the standard for the federal government.

33. CHARLOTTE COUNTY, Florida's online video content as referenced in ¶20 does not comply with the WCAG 2.0 AA guidelines. CHARLOTTE COUNTY, Florida's live streamed County Commission meetings referenced in ¶19 herein also fail to follow WCAG 2.0 AA guidelines for real time closed captioning of video content.

34. Plaintiff has retained J. Courtney Cunningham, PLLC as his legal counsel in this action, and has agreed to pay said law firm reasonable attorneys' fees and costs of litigation.

## COUNT I
## VIOLATION OF TITLE II OF THE ADA

35. Plaintiff adopts the allegations in paragraphs 1 through 34 as if fully set forth herein, and would further state:

36. Defendant's streaming of video content referenced in ¶19, and ¶20 is a service, program or activity within the definition of Title II of the Americans with Disabilities Act.

37. Plaintiff has visited Defendant's website on different occasions as stated in ¶12. Each time, Plaintiff was denied access to Defendant's video content available on Defendant's

website described at ¶20.

38.    On June 5, 2018, Plaintiff requested that Defendant provide an auxiliary aid and service for use of its archived video and live streaming of its County Commission meetings.

39.    Defendant failed to provide an auxiliary aid and service for Plaintiff after receipt of Plaintiff's request for the same and for the archived videos in ¶20.

40.    Defendant has denied Plaintiff the opportunity to participate in or benefit from the programs, services and activities afforded to persons who are not hearing-impaired. Defendant is required to provide full and equal enjoyment of its services, programs, and activities in the most integrated setting appropriate to people with disabilities. 42 U.S.C. §12131, *et. seq.*; 28 C.F.R. Part 35.

41.    Defendant has denied Plaintiff these opportunities due to Plaintiff's disability, i.e. his hearing impairment, being deaf.

42.    Defendant denied Plaintiff the opportunity to participate in a service, program, or activity due to Plaintiff's disability, being deaf.

43.    Defendant has failed to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied participation in a service, program or activity, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services. As a public entity and pursuant to Title II, Defendant must also take appropriate steps to ensure that its communications with individuals with disabilities are as effective as communications with others, and furnish the appropriate auxiliary aids and services, such as closed captioning, to afford individuals with disabilities an equal opportunity to

12

participate in, and enjoy the benefits of it services, programs or activities. 28 C.F.R. §§ 35.160 (a)-(b).

44.    Defendant has failed to provide auxiliary aids and services for the video content referenced in ¶20, including but not limited to "qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; *open and closed captioning, including real-time captioning*; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 35.104 (1) (emphasis supplied)

45.    Defendant has a multimillion dollar yearly budget.  Providing closed captions as requested or the auxiliary aids and services as stated in paragraph 44 above would not result in any undue burden to Defendant.

46.    Providing auxiliary aids and services as stated in paragraph 44 would not fundamentally change the nature of the service, program or activity.

47. As a public entity and pursuant to Title II, Defendant is required to make reasonable modifications in its policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or

13

activity; 28 C.F.R. § 35.130(b)(7).

48.    As long as Defendant fails to comply with the ADA, its regulations and WCAG 2.0 AA standards, Plaintiff remains unable to equally and fully access the Defendant's video archives as well as live steaming content identified in ¶19, and ¶20.

49.    As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages.

## COUNT II

## VIOLATION OF THE REHABILITATION ACT OF 1973

50.    Plaintiff adopts the allegations in paragraphs 1 through 34 as if fully set forth herein.

51.    Plaintiff is expressly authorized to bring this action under the Rehabilitation Act of 1973, 29 U.S.C. Section 794 and 794a(a)(2) and (b)(1)(A), and under Section 505 of the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a incorporating the remedies, rights and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et. seq.

52.    Defendant's video content identified in ¶19 and ¶20, includes CHARLOTTE COUNTY, Florida's live County Commission meetings, and archived County Commission and other videos. None of the archived video content is closed-captioned and the live streaming County Commission meetings are not closed-captioned.

53.    Congress enacted the Rehabilitation Act of 1973 to enforce the policy of the United States that all program, projects and activities receiving federal assistance "... be carried out in manner consistent with the principles of ... inclusion, integrations and full participation of the

14

individuals [with disabilities]." 29 U.S.C. § 701(c)(3).

54.    CHARLOTTE COUNTY, Florida is a recipient of federal financial assistance bringing CHARLOTTE COUNTY, Florida under the Rehabilitation Act which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities".

55. Section 504 of the Rehabilitation Act prohibits recipients of federal funding from discriminating against disabled persons and requires that facilities, programs or activities operated by a federally-funded entity be readily accessible to persons with disabilities.  See 28 C.F.R. § 42.520.

56. The Rehabilitation Act defines "program or activity" to mean all of the operations of a department, agency, special purpose district, or other instrumentality of State or local government.    CHARLOTTE COUNTY, FLORIDA is an instrumentality of State or local government.  Defendant's publicly available online content and streaming services is a "program or activity" within the meaning of the Rehabilitation Act. 29 U.S.C. Section 794(b)(1)(A).

57.    On or about June 5, 2018, Plaintiff requested that CHARLOTTE COUNTY, Florida provide effective communications by granting auxiliary, aids and services--closed captioning of videos on its website--and closed captioning of its live County Commission meetings.

58. CHARLOTTE COUNTY, Florida has failed to provide Plaintiff with the requested auxiliary aids and services.

59.    As stated in ¶12, Plaintiff was denied access to CHARLOTTE COUNTY, Florida's archived video content solely by reason of his disability.  This denial of access to Defendants "program or activity" subjected Plaintiff to discrimination, excluded Plaintiff from participation in the program or activity and denied Plaintiff the benefits of Defendants live streamed and

15

archived video streaming service. As of this filing, the video content remains uncaptioned and inaccessible to qualified or otherwise qualified persons.

60. The international website standards organization, W3C, has published widely-accepted guidelines ("WCAG 2.0 AA") for making video content accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice and by Federal Courts and the United States Access Board.

61. CHARLOTTE COUNTY, Florida's live streamed County Commission meetings and archived video recordings do not comply with the WCAG 2.0 AA guidelines because they are not closed captioned.

62. CHARLOTTE COUNTY, Florida has engaged in unlawful practices in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 since 2005. These practices include but are not limited to denying Eddie I. Sierra, an individual with a disability who, with or without reasonable modifications to the rules, policies or practices; the removal of communication barriers; or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by CHARLOTTE COUNTY, Florida.

63. CHARLOTTE COUNTY, Florida has acted with deliberate indifference to the provisions of the Rehabilitation Act and Title II of the ADA in regards to the unlawful practices described herein because CHARLOTTE COUNTY, Florida is aware of the availability of auxiliary aids and services and fails to provide any such services, including but not limited to closed captioning for its content identified in ¶19 and ¶20  and has failed to provide such auxiliary aids and services upon notice of Plaintiff's request for the same.

16

64.     As a direct and proximate result of CHARLOTTE COUNTY, Florida's unlawful discrimination, Plaintiff has sustained injuries and damages and has suffered shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish and has been segregated and prohibited from participating and observing CHARLOTTE COUNTY, Florida government.

## COUNT III
### VIOLATION OF 42 U.S.C. § 1983

65.     Plaintiff adopts the allegations in paragraphs 1 through 34 as if fully set forth herein.

66.     At all times relevant, Defendant CHARLOTTE COUNTY, Florida has been and is a "person" under 42 U.S.C. § 1983.

67.     Plaintiff is an advocate for the elderly and disabled.  In that capacity he monitors the current and historic actions of public entities to review and assess government policies toward the elderly and disabled.  Like Plaintiff, fifty percent of persons over 75 years of age have hearing disabilities.

68.     Defendant CHARLOTTE COUNTY, Florida, subjected or caused Plaintiff to be subjected to a deprivation of his fundamental rights under the First Amendment and Equal Protection Clause of the United States Constitution because CHARLOTTE COUNTY, Florida denied Plaintiff access to the information needed participate in the CHARLOTTE COUNTY, Florida legislative process because of its failure to provide closed captions for its pre-recorded video content of meetings of the CHARLOTTE COUNTY, Florida Commission.

69.     In 2003, the United States Department of Justice warned states and local entities that by failing to provide auxiliary aids and services for its website content, persons with disabilities might not be able to use and benefit from the content on the websites.  Therefore, Defendant

knew or should have known that it was depriving persons who are deaf or hard of hearing of their First Amendment rights.[3]

69. But, Defendant CHARLOTTE COUNTY, Florida, acting in furtherance of its custom, usage and practice since 2005, denied Plaintiff's First Amendment rights to participate in the in the political processes of CHARLOTTE COUNTY, Florida, including failure to make its publicly available video content accessible to Plaintiff thereby enabling Plaintiff to meaningfully participate and conduct his advocacy to protect the rights of the elderly and persons with disabilities.

70. As a direct and proximate result of Defendant's denial of Plaintiff's First Amendment and Equal Protection rights, Plaintiff has sustained injuries and damages.

WHEREFORE the Plaintiff requests relief as set forth below:

A. A Declaratory Judgment finding that, as of the commencement of this action, Defendant was in violation of the specific requirements of Rehabilitation Act and its relevant implementing regulations, in that Defendant took no action that was reasonably calculated to ensure that its video content described herein was fully accessible to, and independently usable by, disabled and hearing-impaired individuals;

B. A permanent injunction pursuant to 42 U.S.C. §12133; 28 CFR §35.160(a)1 and (b)1 and 29 U.S.C. § 794a(a)(2) which directs Defendant to take all steps necessary to bring its video content into full compliance with the requirements set forth in the ADA, and its implementing regulations, and the Rehabilitation Act of 1973, so that its

---

[3] https://www.ada.gov/websites2.htm

video and live streaming content is fully accessible to, and independently usable by, hearing-disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C.  A Declaratory Judgement finding that at the commencement of this action, Defendant was in violation of 42 U.S.C. § 1983 because Defendant deprived Plaintiff of his fundamental First Amendment rights.

D.  That Defendant ensure that all employees involved in website video content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

E.  That Defendant create an accessibility policy that will be posted on its website, along with an e-mail address and toll-free phone number to report accessibility-related problems.

F.  Damages to Plaintiff as compensation for violating Plaintiff's rights under the Rehabilitation Act of 1973, Title II of the ADA and 42 U.S.C. §1983 for violation of Plaintiff's Constitutional rights.

G.  Payment of costs of suit;

H.  Payment of reasonable attorneys' fees and costs, pursuant to 29 U.S.C. §794(a)(b) of the Rehabilitation Act and 42 U.S.C. § 1988(b); and

I.  Any and all other relief this Court deems necessary and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 18th day of July 2018.

Respectfully Submitted,

*/s/ Juan Courtney Cunningham*
J. Courtney Cunningham, Esq.
Fla. Bar. No.: 628166
J. COURTNEY CUNNINGHAM, PLLC
8950 S.W. 74TH Court, Suite 2201
Miami, FL 33156
T:  305-351-2014
F:  305-513-5942
cc@cunninghampllc.com